THE STATE *Ex Rel.* THE SOUTH CAROLINA RAILROAD COMPANY *vs.* THE COLUMBIA AND AUGUSTA RAILROAD COMPANY.

Under Section 4 of Article IV of the Constitution, vesting the Supreme Court with power to issue "original and remedial writs," that Court may issue writs of prohibition.

Where a railroad corporation, claiming a right of way over the lands of another, applies by petition to the Circuit Judge, under the Act (No. 43) of September, 1868, for the empannoling of a jury to assess the amount of compensation to be paid for such right of way, and the answer to the petition denies the right of the petitioner to take the lands claimed, and the Circuit Judge is proceeding to have the question of compensation determined, without first determining the question of right, prohibition will not lie from the Supreme Court to restrain him from acting.

The powers of the Circuit Judge, under the Act, are judicial, and not ministerial; and, in the execution of his duties, he may exercise common law powers.

Where an inferior Court has jurisdiction of the subject-matter of the proceeding, prohibition, on the ground of error in the proceeding, does not lie to restrain it from acting.

It is important that the distinctions between legal remedies should be observed, and that a party, in pursuit of his rights, should be required to adopt the remedy which the law provides for his case, or fail in his application to the Court.

This was a suggestion to this Court, praying for a writ of prohibition to restrain the Columbia and Augusta Railroad Company, the respondents, and the Hon. Z. Platt, Judge of the Second Judicial Circuit of the State, and the Clerk of the Court for Edgefield County, from proceeding, under an order by His Honor Judge Platt, to condemn and appropriate to the use of respondents certain lands and right of way of the relators, until the necessity and propriety of such condemnation, and the legal right of the respondents so to

condemn, shall be first heard and decided, on preliminary trial, by the competent judicial tribunals of the State.

The facts necessary to a full understanding of the case, and the grounds upon which the relators claimed that the writ should be issued, are stated in the judgment of the Court delivered by the Chief Justice, but it may not be amiss to state here, in a condensed form, the principal facts and grounds upon which the relators relied.

On the 16th November, 1868, the respondents presented a petition to Hon. Z. Platt, Judge of the Second Judicial Circuit, setting forth that, in the construction of their railroad, the respondents require to pass over certain lands of the relators in Edgefield County (describing them); that notice had been given and consent refused; and praying that a jury of twelve be empanneled to assess the compensation which the respondents should pay to the relators for the lands the use of which they so required.

The relators filed a written answer to the petition, and therein denied the right of the respondents to enter upon and take the lands mentioned in the petition, setting forth the grounds upon which they rested their denial, and also submitting, under Section 8th of the Act (No. 43) of September, 1868, that the construction of the respondents' road upon the lands aforesaid would operate as a hindrance to the use and enjoyment by the relators of their own right of way.

The petition was heard on the 11th December, 1868, and His Honor Judge Platt expressly, and in terms declining to adjudicate the question of legal right to enter upon and take the lands of the relators, nevertheless made an order directing the Clerk of the Court of Edgefield County to empannel a jury to assess the amount of compensation to be paid for the lands.

A jury was accordingly empanneled, and they made a return in the form of an inquisition, stating the amounts they had assessed, &c.

This suggestion was then filed, alleging that the proceedings before Judge Platt were irregular, illegal and void, for the following, among other reasons: (1.) That the Act of 1868 (No. 43) only declares the "manner" by which lands, or the right of way over lands, may be taken, and does not confer the right to take said lands or right of way. (2.) That the right of way sought to be condemned in this case is a right of way granted by the State to the relators, and the lands sought to be condemned are lands purchased by the relators under their charter for the purposes of their road. (3.) That the legal

right of the respondents to enter upon and take said right of way and lands was traversed and put in issue in the answer of the relators to the petition of the respondents; and that no legal condemnation of said lands and right of way, and no order to empannel a jury under said Act, could be made until the question of right had been determined by the competent judicial tribunals of the State; and, (4.) That the proceedings of the Clerk and of the jury empanneled by him were illegal and oppressive, and tend to the injury of the relators.

*Conner, Magrath,* for relators.

*Memminger, Carroll,* contra.

March 8, 1869. The opinion of the Court was delivered by

Moses, C. J. The Court does not entertain any doubt as to its power to issue writs of prohibition in proper cases made.

It is granted, in unequivocal terms, by the 4th Section of the 4th Article of the Constitution. If it is an original and remedial writ, (and of this there can be no doubt,) it is covered by the right conferred in terms as full and complete as if directly expressed.

It was contended, on the argument, that the 15th Section of the same Article vested "exclusive original jurisdiction" in the Circuit Court, "in all civil cases and actions *ex delicto*" not cognizable before Justices of the Peace; and, therefore, that this Court had no original cognizance of the writ.

That Section was only intended to confer on the Circuit Court exclusive original jurisdiction in all actions, as well *ex delicto* as *ex contractu,* and to deprive (except as in said clause excepted) all other Courts of any control over the class of cases comprised in it.

The same Section confers on the Circuit Courts the power to issue writs of *mandamus, prohibition, scire facias,* &c., which clearly shows that they were not to be included among the writs as to which the "exclusive jurisdiction" was granted.

Neither does the Act of 20th August, 1868, (No. 9, 14 Stat., 12,) "to regulate appeals and writs of error to the Supreme Court," attempt in any way to restrict the power. If it did, it would be void and of no effect, for the authority under the Constitution could not be defeated by the act of the Legislature.

It was not an uncommon or extraordinary power to vest in the Supreme Court. The same jurisdiction attaches to the like Courts

in various of the States, and to the Supreme Court of the United States, in certain specified cases, by Act of Congress.

In the judgment we are about to pronounce, we do not propose, in anticipation, to pass on the many and important issues pending between these respective parties, and brought into discussion in the learned argument. The Court will avoid all intimation of opinion on every point, save that which it regards necessary and essential to be adjudicated in the matter before it.

The relators, (the South Carolina Railroad Company,) some time prior to 20th November, 1868, filed a bill on the Equity side of the Circuit Court for Richland County, among other things alleging that the defendants, (the Columbia and Augusta Railroad Company,) chartered under the laws of this State, had entered upon their right of way and franchises secured to them by charter, and, under pretense of constructing their railroad, were, without lawful authority, exercising acts of ownership therein, whereby great and irreparable damage was apprehended by the complainants to their proprietory rights, and asked a preliminary injunction.

The injunction was granted on November 20, 1868, by Associate Justice Willard, on the ground that whatever rights the defendants might have, they had not pursued the course necessary for the appropriation which they sought, and which was required by the Act (No. 43, 14 Stat., 89) passed by the Legislature on the 22d September, 1868. Liberty was reserved to the defendants to move for its dissolution, at any time before the hearing of the case, on proof that they have duly acquired a right to enter, for the purposes of construction, upon the premises claimed by the complainants, as set forth in the said bill.

The suggestion now before the Court substantially avers that, on the 16th October, 1868, the Columbia and Augusta Railroad Company gave notice to the relators, that in the construction of their railway between Graniteville Depot and Hamburg, they would require the right of way in, along and over the right of way and lands claimed by the relators between the said points; that the relators refused their assent to such entry on their lands and right of way, and such condemnation thereof; and, in their return, directed and addressed to the Hon. Z. Platt, (the Judge for the Second Circuit,) before whom the application of the Columbia and Augusta Railroad Company was to be made, denied that the said Company had any right or authority in law to enter upon or condemn the lands or right of way of the relators; and that the Judge, before whom the application was made for a

4

jury to assess the compensation thus claimed, could not grant an order to empannel a jury until the question of legal right put in issue had been first adjudged by the competent judicial tribunals of the State.

That, on the 4th day of December, 1868, His Honor Judge Platt made an order that the petition of the Columbia and Augusta Railroad Company had been presented in due form of law; but, if it be alleged in the answer of relators, that the taking of the lands and right of way, as prayed for, will be a *hindrance* to the use and enjoyment of their highway, within the intent and meaning of the said Act, (No. 43,) and if such ground of objection be made to appear by clear and sufficient evidence produced, then the prayer of the petitioners must be denied, as provided in and by Section 8 of the Act aforesaid.

That, on the 11th day of December, 1868, the parties appeared before His Honor; testimony was taken solely on the question of hindrance, counsel were heard, and, as the suggestion submits, His Honor, declining to adjudicate the question of legal right, on the 17th of said month, pronounced an opinion on the matter before him, and, making it part and parcel of his order, did direct and order a jury to be empanneled, in conformity with the provisions of said Act, to assess the compensation to be paid by the petitioners to the South Carolina Railroad Company, for a way over their land and right of way, at three points named and specified. That the jury was accordingly drawn, and a time appointed for their meeting, not only inconvenient to the relators, as they allege, but rendering it almost impossible for the President and Superintendent of the Company, and their counsel, (who resided in Charleston,) to attend. Objections were also averred to the competency of some of the jurors, to the oath administered to them, to the absence of testimony, and to their whole conduct in passing on the matter submitted. The relators object, and claim a writ of prohibition against the said Columbia and Augusta Railroad Company, the Hon. Z. Platt, and the Clerk of the Court for Edgefield County, restraining them from proceeding under the said order to condemn and appropriate to the Columbia and Augusta Railroad Company, until the necessity and propriety of such condemnation, and the legal right of the Columbia and Augusta Railroad Company so to condemn—all of which are traversed, and put in issue by the return and answer of the South Carolina Railroad Company—shall be first heard and decided on preliminary trial, by the competent judi-

cial tribunals of the State; and various grounds of prohibition are suggested.

That the whole aspect of the case may be presented, it is proper to remark, here, that, although forming no part of the record, it was stated and conceded by counsel, that about the time of the commencement of this proceeding, the injunction granted by Justice Willard, above referred to, was, on motion of the respondents, (parties defendant to the equity case,) dissolved by Judge Boozer, Judge of the Fifth Circuit.

If the causes for which the relators claim a prohibition were before us, in a form of proceeding in which we could consider them, it would not only be proper, but interesting, to discuss at length the points which they raise. A solution and determination of them must, in fact, be made before the rights of these respective companies can be adjusted and quieted.

That they must be passed upon before a conclusive settlement of the issues between them can be had, no one who heard the able discussion can for a moment doubt.

The view, however, which the Court takes of the case before it, will render it unnecessary to review them now, for, in its judgment, in the proceeding here we are confined to a single question. We do not consider that we deviate from the limits which we have thus prescribed for ourselves when we say, that before the relators can be divested of any of the property, rights or franchises which they claim they hold under their charter, they, of common right, are entitled to an adjudication by some Court having the power to hear and determine their extent—the tenure by which they are held—the power of the Legislature over them, and how far that power may be exercised to deprive the company of them—and confer them on some other power or corporation.

These questions, however, must be determined by a tribunal not only competent for their decision, but they must be brought before it in a form and manner recognized by the principles and practice of our Courts.

It is as important that the proper difference between the various remedies through which rights are secured should be observed, as that Courts should be confined to the jurisdiction which the legislative authority has prescribed. A departure from the one, though possibly in itself of little detriment to the public good, would only serve as a precedent, through the force of which it might finally be regarded as a general rule, that, although the legal end and

right might be attained, the form through which they are reached is of minor import.

This would at once destroy all distinctions between forms of remedy, and the Courts, by a quiet submission to such departure, would at last administer justice with no regard to the medium through which it should be reached.

A Court might possess the power of a general jurisdiction, with no superior tribunal to correct its errors or control its proceedings, and yet it would be false to its high trusts if it merely attempted to dispense what, in its conception, it regarded right, without respect to the forms which have been provided for its action.

The question before us—and which alone we decide—is, whether this is a proper case for prohibition.

It is necessary, therefore, to inquire if the Circuit Judge had jurisdiction of the subject-matter in which he granted the order.

The Act (No. 43) provides a mode of procedure by which the lands, or the right of way over the lands, of persons or corporations may be taken for the construction and uses of railways and other works of internal improvement.

In case of refusal of consent without compensation, application is to be made, by petition, to the Circuit Judge of the County wherein the lands are situated, for the empanneling of a jury to ascertain the amount to be paid as just compensation.

The Judge is then to order the Clerk to empannel a jury, who are to examine the said lands, and assess the compensation for the right of way over the same. An appeal is reserved to either party to a jury in open Court, whose verdict shall be final and conclusive, unless, on writ of error, a new trial is awarded by the Supreme Court.

The 8th Section declares that no lands or right of way heretofore or hereafter procured for the construction or use of a highway shall be considered exempt from liability to condemnation, provided that, in the construction of such other highway, there be no *hindrance* to the use and enjoyment of the highway for which such right or lands were previously procured.

It is thus apparent that the Circuit Judge had power, under the Act, to entertain the petition and consider the prayer of it. To test this, let us ask if, by any proceeding of the character now sought, he could have been prohibited from hearing it? The Act confers the power in express terms. In his judicial capacity he was at liberty to pass upon the right which the petitioners claimed

by their proceeding, and to have abstained from acting, if he con-
cluded it against them. In fact, if he had not expressly made his
"decision and opinion part and parcel of the order," it might have
required much argument on the part of these relators to have satis-
fied the Court that he had not decided the question of right, as
well as that of hindrance; and, in such event, they might have been
subjected to the necessity of seeking a reversal of his judgment on
that point, instead of asking, as they do, to prohibit further action
under his order, because, without deciding the question of right, he
granted the order of condemnation.

It is said that he erred, and violated the purpose of the Act,
which the relators contend only declares the *manner* by which
lands may be taken, and does not confer the *right* to take the
lands or right of way.

The powers of the Circuit Judge under the Act are judicial.
He is not confined to the mere ministerial duty of granting the or-
der for inquiry as to the compensation. He may require the party
claiming the exercise of such high prerogative, first to satisfy
him that he has the right, and, as this, if denied, would involve
the title to land, he could, in his Court, order an issue to try
and decide whether the right thus demanded was with the peti-
tioners.

Assuming that he erred in granting the order before the right
was determined, is prohibition the remedy to which these relators
are entitled for the correction of the error?

It must be remembered that he is a Judge of a Superior Court,
clothed with all the common law authority which attaches to that
jurisdiction. In giving construction to a statute, and carrying out,
according to his view, the ends which it contemplated, he acted as
a Judge in no way deprived of his general powers.

To make this case analagous to that of *Thompson and Ingram*,
(4 A. & E.,) 68 E. C. L., 709, to which the counsel for the relators re-
ferred, the jurisdiction of the Circuit Judge must have ceased
when he found the right of the petitioners (the C. & A. R. R. Co.)
contested. Did that circumstance divest him of all power of fur-
ther procedure under the Act? He was the Judge of a Court
having the right to try the question of title, and it was for him to
decide whether he was thereby deprived of jurisdiction.

The point here is not whether the Judge should have required
the right to have been established by the mode proper in his Court
before he granted the order, but whether, not having done so, he,

State *vs.* The Col. and Aug. R. R. Company.

and those acting by virtue of his order, can be prohibited from the enforcement of it.

*Mr. Justice Blackstone*, 3 Comm., 112, says: "Prohibition is a writ issuing properly out of the Court of King's Bench, being the King's prerogative writ, * * * * * * directed to the Judges and parties to a suit in any inferior Court, commanding them to cease from the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other Court."

The high authority for this definition will commend it to respect and acceptance. Let us apply its terms to the case under consideration: By the Act, the cause must have its origin before the Circuit Judge, and, in fact, no other Court could take cognizance of it. If the question of right, on the part of the petitioners, is to be regarded only as a collateral point, and not, as the relators claim, of direct, immediate and essential connection, what Court possessed the power to try and determine it but the Circuit Court? What Court but it can try the title or claim to land? Where the subject-matter is within the jurisdiction of the Court, and it errs in its decision, the remedy is not by prohibition.— *Grant* vs. *Gould*, 2 Hy. B., 100; *State* vs. *Wakely*, 2 N. and McC., 410.

In the *People ex rel. Kerr* vs. *Seward*, 7 Wendell, 518, it is declared to be, not prohibition, but *certiorari*.

In *Taft* vs. *Ryner*, (Man. G. & S.,) 57 E. C. L., 162, it was held that a writ of prohibition to the Judge of a County Court, in a matter within his jurisdiction, could not issue, although the Act creating the Court had taken away the writ of error. *Maule*, J., said, "this might have been error, if the writ had not been taken away in these cases; and this shows that it is no ground for prohibition."

*Buller*, J., in *Ld. Camden et al.* vs. *Home*, 4 T. R., 382, said, "whatever may have passed in the several cases on the subject in the last century, the grounds of granting and refusing prohibitions are now clearly and accurately defined. If the Court below have jurisdiction over the subject, though they may mistake in their judgment, that is no ground for a prohibition, but only matter of appeal."

An examination of the cases in this State, referred to by the counsel for the relators, will show that there is no contrariety or repugnance between them and the principles we have affirmed here.

They were, to some extent, reviewed in the *State* vs. *Nathan*, 4 Rich., 514, and the conclusion of the Court in this case is in conformity with the results there announced.

Where Spiritual Courts, or Courts of Admiralty, or other Courts, whose proceedings differ from the common law, exceed their jurisdiction, or determine any matter of common law cognizance, such as the construction of an Act of Parliament, or apply a rule of evidence otherwise than the common law requires, prohibition lies.— *Bacon*, Abr. Prohibition, Letter K; and on that principle was the decision in the case of *Gould* vs. *Tupper*, 5 East., 344.

The distinction proceeds upon the ground that, not having common law powers, if they attempt to administer their functions by the rules of common law, they must not construe or distinguish them according to their own notion, but must act in the premises with strict regard to it.

The cases founded on that principle, and cited as authority in the argument, have no application, because the Circuit Court has, and can exercise, common law powers.

The motion for the writ of prohibition is refused.

*Willard*, A. J., and *Hoge*, A. J., concurred.